UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER VEGA,

            Movant,

  -vs-

UNITED STATES OF AMERICA,

            Respondent.

**DECISION AND ORDER**
**Civil Case**
**No. 6:18-cv-6674-MAT**

**Criminal Case**
**No. 6:17-cr-6015-FPG**

---

**INTRODUCTION**

Proceeding pro se, Christopher Vega ("Vega" or "Movant") has filed a Motion to Vacate the Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). For the reasons discussed below, the Section 2255 Motion is denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On June 19, 2017, Vega appeared with his defense attorney, Mark Hosken, Esq. ("Trial Counsel") before Hon. Frank P. Geraci, Jr., United States District Judge, and entered guilty pleas to Counts 1 and 4 of a four-count Indictment. Count 1 charged Vega with possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); Count 4 charged him with possession of firearms, including a short-barreled rifle,[1] in furtherance of a drug trafficking crime, in violation of 18 U.S.C.

---

[1] See 18 U.S.C. § 921(a)(6) ("The term 'short-barreled shotgun' means a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than twenty-six inches.")

§ 924(c)(1)(A)(i). See Plea Agreement (ECF #36). The parties agreed that the aggregate sentencing range under the United States Sentencing Guidelines ("Guidelines") was 177 to 191 months. The Plea Agreement provided that, should the Court impose a sentence within that range or less, Vega would be precluded from directly or collaterally challenging his sentence. In signing the Plea Agreement, Vega averred that he had read it and had a full opportunity to discuss it with Trial Counsel, that it represented the total agreement reached between himself and the Government, and that he had not been made any promises or representations other than what was contained in the agreement.

The Plea Agreement was executed in open court following an extensive plea colloquy during which the Court carefully reviewed the Plea Agreement's salient terms. See Transcript of 6/19/17 Plea Proceeding ("Plea. Tr."), Government's Exhibit 2 ("Ex. 2") (ECF #3). The Court confirmed that Vega was of sound mind and had not been coerced in any way into entering the plea of guilty. Plea Tr., pp. 2-3. The Court also confirmed that Vega reviewed the Plea Agreement with his attorney, and that he was satisfied with Trial Counsel's representation. Id., p. 3. The Court informed Vega of the charges against him, the maximum penalties applicable to each, the elements of the charged offenses, and also confirmed that there was a factual basis to support the guilty pleas. Id., pp. 4-9. Vega affirmed several times that one of the firearms he possessed was a sawed-off, short-barreled rifle. Id., pp. 7, 8, 9, 18.

The Court further confirmed Vega's understanding of the Guidelines as they applied to Count 1, and that the statutory mandatory minimum sentence for Count 4 must be run consecutively to the sentence imposed on Count 1. Plea Tr., pp. 9-11. Further, the Court ascertained that Vega understood that when the sentences regarding Counts 1 and 4 were combined, he faced an aggregate sentencing range of 177 to 191 months. Id., p. 11. Vega confirmed his understanding that, if he were sentenced within that range, he would be waiving his right to directly appeal the sentence. Id., pp. 12-13. When asked if there was anything about the Plea Aagreement that he did not understand or if he had any questions for counsel, Vega replied in the negative. Id., pp. 13-14. Vega then executed the plea agreement in the presence of the Court and both parties. Id., pp. 14-15.

The Court read aloud the criminal charges to which Vega was pleading, Vega entered pleas of "guilty" to both Counts 1 and 4. Plea Tr., pp. 15-16. The Court then reviewed the substance of the colloquy he had had with Vega, wherein Vega expressed his understanding of the charges against him, acknowledged the rights he was giving up by pleading guilty, knowingly and voluntarily waived those rights, and articulated a sufficient factual basis for his plea. The Court found that based upon Vega's statements on the record, the "plea is in all respects knowing and voluntary." Therefore, the Court "does accept the plea of guilty." Id., p. 21.

At sentencing on September 20, 2017, Trial Counsel confirmed that the defense had no objections to the Pre-Sentencing Report ("PSR"). See Transcript of 9/20/2017 Sentencing Proceeding ("Sentencing Tr."), Gov't Ex. 3 (ECF #3), p. 2. Vega did make a statement to the Court but at no time objected to the fact that one of the firearms he admitted to possessing was classified as a sawed-off, short-barreled rifle. Sentencing Tr., pp. 7-10. The Court adopted the PSR. After addressing the sentencing factors set forth in 18 U.S.C. § 3553, the Court departed downward on Count 1 and sentenced Vega principally to an aggregate term of 144 months' imprisonment. Id. pp. 2, 10-15. After notifying Vega of his right to appeal and advising him to discuss potential appellate issues with Trial Counsel, the Court observed that because he was sentenced within the parameters of the Plea Agreement, he had waived his right to appeal. Id., p. 22. Vega did not file a notice of appeal.

On September 21, 2018, Vega filed the instant Section 2255 Motion (ECF #47), asserting that Trial Counsel failed to provide constitutionally effective assistance because he did not file a Notice of Appeal despite Vega asking him to do so.

After being directed to respond to the Section 2255 Motion, the Government filed a Motion for Order to Compel Affidavit asking the Court to compel Trial Counsel to submit an affidavit Vega asked him to file a Notice of Appeal. The Court (Geraci, D.J.) granted the motion in an Order dated November 14, 2018, finding that by

4

pursuing an ineffective assistance of counsel claim based upon Trial Counsel's alleged failure to file a Notice of Appeal, Vega had waived the attorney-client privilege protecting his communications with Trial Counsel on this issue.

The Government filed its Response (ECF #61) on November 5, 2019. Per the terms of the Judge Geraci's previous scheduling text order, any reply from Vega was due within 20 days of his receipt of the Government's Response. To date, Vega has not filed a reply or sought an extension of time in which to do so.

The Section 2255 Motion was transferred to the undersigned on November 7, 2019.

## **STANDARD OF REVIEW UNDER SECTION 2255**

Section 2255 provides, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court may dismiss a Section 2255 motion without a hearing if the motion and the record "conclusively show[,]" id., that the movant is not entitled to relief. See, e.g., Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) (district court was not required to hold full

testimonial hearing before deciding federal prisoner's motion to vacate, set aside or correct sentence based on claim of ineffective assistance of counsel alleging that counsel prevented him from exercising his right to testify on his own behalf, where prisoner made only general allegation, and record was supplemented by detailed affidavit from trial counsel credibly describing circumstances concerning prisoner's failure to testify).

**MERITS OF THE SECTION 2255 MOTION**

**I. The Ineffective Assistance Claims**

   **A. Standard of Review**

"A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty . . . and sentencing[.]" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013)(citing Hill v. Lockhart, 474 U.S. 52, 58 (1985); Missouri v. Frye, ___ U.S. ____, 132 S.Ct. 1399, 1405 (2012); Glover v. United States, 531 U.S. 198, 202-04 (2001); Mempa v. Rhay, 389 U.S. 128, 134 (1967)).

To succeed on a Sixth Amendment ineffective assistance claim, the defendant must fulfill a two-part test. First, the defendant "must show that counsel's performance was deficient," Strickland v. Washington, 466 U.S. at 687 (1984), such that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," id. at 690. In addition, the defendant must show "that the deficient performance

6

prejudiced the defense," id. at 687. Prejudice is generally defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

In the particular context of guilty pleas, the prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. "With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." Gonzalez, 722 F.3d at 130 (citing Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1387 (2012); Glover, 531 U.S. at 203 ("Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.")). An ineffective assistance claim must be rejected if the defendant fails to meet either prong of the Strickland test. Strickland, 466 U.S. at 687, 697.

B.   **Trial Counsel's Alleged Errors**

   1.   **Failure to File a Notice of Appeal**

      a.   **Overview**

This particular claim of ineffective assistance is premised on Vega's assertion the rifle-barrel of one of the weapons he was

7

accused of possessing[2] was shortened by law enforcement officials after they seized it from his home. See Section 2255 Motion (ECF #47), pp. 5-6, 8. Vega claims he was unaware it was shortened and believed it was longer than 26 inches at the time he possessed it. Id., p. 5.

In considering whether the failure to file a notice of appeal constitutes ineffective assistance, the Second Circuit has "adopted the Seventh Circuit's approach under which counsel is ineffective only when ignoring a defendant's explicit direction to file an appeal." Fernandez v. United States, 146 F.3d 148, 149 (2d Cir. 1998) (per curiam) (citing Morales v. United States, 143 F.3d 94, 96-96 (2d Cir. 1998); Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994)). In Campusano v. United States, 442 F.3d 770 (2d Cir. 2006), the Second Circuit extended the Supreme Court's holding in Roe v. Flores-Ortega, 528 U.S. 470 (2000), to situations where a defendant has voluntarily waived his right to appeal. Specifically, the Second Circuit held in Campusano that the defense counsel rendered ineffective assistance by ignoring the defendant's "specific instruction" to file a notice of appeal, notwithstanding the defendant's waiver of his appellate rights in his plea agreement. Id. at 773, 775 (citing Flores-Ortega, 528 U.S. at 477).

---

[2] The Plea Agreement set forth Count 4 as "a violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 924(c)(1)(B)(i) . . . possession of firearms, including a short-barreled rifle, in furtherance of a drug trafficking crime." Gov't Ex. 1, ¶1b.

8

In Campusano, the Second Circuit announced that "w[]hen a defendant claims that his attorney failed to file a requested notice of appeal, the following proceedings will ensue: (1) a hearing before the district court pursuant to § 2255 to determine whether the client requested the appeal; (2) an appeal from the district court's ruling, should either party seek one; and (3) a direct appeal if the defendant did in fact request that a notice of appeal be filed." 442 F.3d at 776. The Second Circuit described the fact-finding it now requires as "relatively simple" and noted that "the district court has discretion to determine if a testimonial hearing will be conducted." Id. (citing Chang, 250 F.3d at 85 (noting that the Supreme Court has held that, "although a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing")). For instance, the Second Circuit held in Chang that, where the defendant and his counsel submitted conflicting affidavits on the question of whether defense counsel had denied the defendant the opportunity to testify in his own defense, the district court "reasonably decided that "the testimony of [the defendant] and his trial counsel would add little or nothing to the written submissions[,]" 250 F.3d at 86, especially given that the defendant relied "solely on his own highly self-serving and improbable assertions" while counsel offered a "detailed description of events [that] was eminently credible." Id. Following Campusano, district courts have routinely resolved ineffective

9

assistance claims premised on the alleged failure to file a notice of appeal without requiring a full testimonial hearing. E.g., Kapelioujnyi v. United States, 779 F. Supp.2d 250, 253 (E.D.N.Y. 2009), aff'd, 422 F. App'x 25 (2d Cir. 2011); Garcia v. United States, No. 02 CR. 1033LBS, 2007 WL 1295726, at *2 (S.D.N.Y. Apr. 26, 2007), aff'd, 321 F. App'x 90 (2d Cir. 2009).

### b. An Evidentiary Hearing Is Unnecessary

Under Campusano, the first step is determining whether an appeal, in fact, was requested. As discussed below, the Court finds that the evidence in the record does not substantiate Vega's claim that he requested an appeal. Consequently, there is no need for a full testimonial hearing.

At the outset, the Court reviews the statements Vega made before filing his Section 2255 Motion regarding his understanding of the factual basis for Count 4. First, Vega signed the Plea Agreement and, in doing so, confirmed that he had read, understood, and agreed with the Agreement's description of the rifle in question as a sawed-off .22 long rifle caliber, Marlin 795 semi-automatic rifle, bearing serial number 98460559. He further agreed that it was short-barreled rifle having a barrel length of 11 5/8 inches and an over-all length of 21 15/16 inches. Gov't Ex. 1 (ECF #3), ¶¶ 5a, 5b.

Then, in open court at the plea hearing, Vega stated under oath that he knowingly possessed the sawed-off .22 long rifle

caliber Marlin 795 semi-automatic rifle, and that it was short-barreled rifle. Gov't Ex. 2, p. 8.

Next, the PSR, which Vega reviewed, described the rifle as a short-barreled rifle, referring to it in six different paragraphs. See PSR, p. 1, ¶¶ 10, 30, 33(d), 35 & 51. Vega filed no objections to the PSR. Vega made no objections to the PSR. Gov't Ex. 3 (ECF #1), p. 2.

Finally, at sentencing, Judge Geraci noted that Vega had pleaded guilty to possession of a short-barreled rifle. Vega made no objections at that time. Id., p. 10.

Against this backdrop of sworn statements, Vega now offers his unsworn assertion that he was unaware either at the time he signed the Plea Agreement, or when he entered his guilty plea, or when he came before the Court to be sentenced, that the Marlin 795 semi-automatic rifle was a short-barreled rifle. Instead, at some unspecified time "on the day [he] was sentenced, [he] asked [his] attorney to file a notice of appeal so [he] could challenge the 120 month term of imprisonment regarding the in furtherance of a drug trafficking crime, specifically, the length the short-barreled rifle" because "he did not know that the rifle had been altered beyond the twenty-six inches." Section 2255 Motion (ECF #47), p. 5 (capital letters omitted).

In contrast, Trial Counsel submitted a sworn affidavit, see Gov't Ex. 4 (ECF #3), detailing his conversations with Vega about the plea agreement and the appellate rights waiver. Trial Counsel

11

explained to Vega that he was waiving the right to appeal any sentence within or below the advisory United States Sentencing Guidelines ("Guidelines") range of 177 to 191 months (120 months on Count 4 to run consecutively to 57 to 71 months on Count 1). Id., ¶ 7. Vega indicated that he understood this provision. Id.

After the sentencing hearing, Trial Counsel met with Vega in the U.S. Marshals Service lockup at the Courthouse and explained Vega's appellate rights, the scope of the appellate rights waiver provision in the Plea Agreement, and the necessity of filing a notice of appeal within two weeks of entry of the judgment. Id. Trial Counsel informed Vega that he would file a Notice of Appeal on his behalf—notwithstanding the appellate rights waiver—should Vega direct Trial Counsel to do so. Id. Trial Counsel avers that "Vega stated unequivocally that he did not want to appeal." Id.

Trial Counsel subsequently spoke with Vega via telephone on four occasions (September 25, 2017; October 5, 2017; November 6, 2017; and December 27, 2017). Id., ¶ 10. At no time during any of those conversation did Vega request that he file a notice of appeal. Id.

On May 14, 2018, Trial Counsel spoke to Vega via telephone. During this conversation, Vega informed Trial Counsel that he did want to appeal. Id., ¶ 11. Trial Counsel "told him that there was

nothing to appeal and that the time to appeal had passed as he had been sentenced over seven months before." Id. [3]

As the foregoing account makes clear, the only evidence that Vega directed Trial Counsel to file an appeal on the day of sentencing comes from his own <u>unsworn</u> statement in his Section 2255 Motion, which is directly and specifically contradicted by Trial Counsel's detailed, <u>sworn</u> affidavit. See <u>Riggi v. United States</u>, No. 04 CIV 7852 JSR GWG, 2007 WL 1933934, at *8 (S.D.N.Y. July 5, 2007) (declining to hold evidentiary hearing; rejecting claim that defendant told counsel to file a notice of appeal; noting that "[n]one of Riggi's contentions about his direct appeal appear in a

---

[3]
 A criminal defendant has ten days after entry of judgment in which to file a notice of appeal. Fed. R. App. P. 4(b)(1)(A)(i). An untimely notice of appeal is a "jurisdictional defect" mandating "dismissal of the appeal without reaching its merits." United States v. Batista, 22 F.3d 492, 493 (2d Cir. 1994) (<u>per curiam</u>). Fed. R. App. P. 4(b)(4) allows the district court to "resurrect[ ]," Batista, 22 F.3d at 493, an untimely notice of appeal under limited circumstances, as follows:

> Upon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).

Fed. R. App. P. 4(b)(4). When "a criminal defendant files a notice of appeal after the ten day deadline of Rule 4(b), but <u>before the additional thirty day period for requesting extensions has expired</u>, the district court should treat the notice as a request for an extension." Batista, 22 F.3d at 493 (emphasis supplied). If the district court then finds excusable neglect or good cause, and grants the extension, "the notice of appeal will become effective <u>nunc pro tunc</u>." Id. at 494. On the other hand, if a defendant files a notice of appeal <u>after</u> expiration of the 30-day window, it cannot be made timely by a <u>nunc pro tunc</u> extension of 30 days. E.g., United States v. Kinyua, No. 02 CR. 173 (DLC), 2002 WL 31357700, at *2 (S.D.N.Y. Oct. 17, 2002).
 Thus, had Trial Counsel filed a notice of appeal after the May 2018 phone call with Vega, and asked the Court to construe it as an extension request, the Court would have been without jurisdiction to grant such an extension. Kinyua, 2002 WL 31357700, at *2. This is unlike the situation in Campusano, where the defense attorney believed an appeal would be frivolous due to the appellate rights waiver, declined to file a requested notice of appeal, and then failed to file an adequate Anders brief so that the Circuit could determine whether the appeal would be frivolous. 442 F.3d at 775.

13

document executed under penalty of perjury"). Although Vega specifies the date on which he told Trial Counsel to file a notice of appeal, he does not indicate whether the conversation occurred before or after the sentencing hearing, where the conversation took place, or any details about the conversation, such as what Trial Counsel said in response to the alleged request. Nor does Vega explain "why he thought he would have the right to appeal" given the fact that he had just stated under oath (or was about to state under oath) that he was waiving his appellate rights and that he knew he possessed a sawed-off rifle. Riggi, 2007 WL 1933934, at *8 (citing Shef v. United States, No. 06CV2091(ARR)(CLP), 2007 WL 812104, at *5 (E.D.N.Y. Mar. 14, 2007)); see also Douchette v. United States, No. 6:13-cv-06157-MAT, 6:10-cr-06508-MAT, 2017 WL 2931385, at *5 (W.D.N.Y. July 10, 2017) (no hearing required where petitioner claimed to have instructed attorney to file appeal but "did not provide any specific details about the alleged conversation, such as the date on which it took place and where it occurred, what [the attorney] said in response to the . . . alleged request, what issues [the petitioner] wanted [the attorney] to have raised on direct appeal, an explanation as to why these issues where meritorious or at least colorable, or suggestions as to how to overcome the preclusive effect of the appellate rights waiver in his knowing, intelligent and voluntary plea agreement"). Notably, Vega "proffers no evidence of ever contacting counsel to inquire

how his appeal was proceeding, nor does he allege that he did any other follow-up." Garcia, 2007 WL 1295726, at *3.

Given that Trial Counsel's "description of events [is] eminently credible," Chang, 250 F.3d at 86, there is no reason to hold an evidentiary hearing on this matter. "Courts faced with similar circumstances—an assertion by a petitioner that he requested to file a notice of appeal and an attorney affidavit contradicting this assertion—have similarly denied habeas petitions without an evidentiary hearing." Riggi, 2007 WL 1933934, at *8 (citing Lebron v. United States, No. 03 CR. 570 (SWK), 2007 WL 1159646, at *4 (S.D.N.Y. Apr. 18, 2007); Shef, 2007 WL 812104, at *5; Lopez v. United States, No. 03 CR. 317(SWK), 2006 WL 2020389, at *2 (S.D.N.Y. July 12, 2006) (collecting cases); other citations and footnote omitted). The Court finds that Vega made no request on the day of sentencing to file a notice of appeal. Therefore, the Court rejects Vega's claim Trial Counsel was ineffective for ignoring this alleged request to file a notice of appeal.

### 2. Failure to Investigate

Vega also contends that Trial Counsel was ineffective for failing to investigate his allegation that law enforcement altered the .22 long rifle caliber, Marlin 795 semi-automatic rifle after it left Vega's possession. According to Vega, when local law enforcement officials executed the search warrant, the Marlin 795 semi-automatic rifle bearing serial number 98460559 had a full length of over 37 inches and "the wooden stock was replaced with a

15

metal detachable handle that measured sixteen (16) inches length." Section 2255 Motion, p. 6. On an unspecified date, Vega "informed [his] attorney that someone removed the metal [sic] stock handle from that particular weapon." Id. Vega states that he asked "[his] attorney to investigate [his] claims, and counsel refused, and [he] was forced to plead guilty to possessing that particular weapon in furtherance of a drug trafficking offense." Id.

In Hill, the Supreme Court explained that Strickland's "prejudice" inquiry in cases involving guilty please "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." 474 U.S. at 59. For instance, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Id. Here, the allegedly exculpatory evidence which Trial Counsel failed to investigate is purported evidence tampering by law enforcement authorities. This alleged misconduct is based solely on Vega's vague and unsworn statements, which are contrary to every sworn statement he made during his criminal proceeding in which he specifically admitted, among other things, to knowingly possessing a short-barreled rifle, that he was not pressured or coerced into pleading guilty, and that he was satisfied with Trial

16

Counsel's representation.[4] "A trial court may fairly rely upon a defendants sworn statements made in open court." Salerno v. Berbary, 389 F. Supp.2d 480, 484-85 (W.D.N.Y. 2005) (citing United States v. Hernandez, 242 F.3d 110, 114 (2d Cir. 2001) (finding that habeas petitioner's claim of ineffective assistance of counsel in regard to plea agreement and plea hearing failed on the merits where petitioner's allegations contradicted his plea allocution statements)). Given Vega's prior statements under oath, he cannot succeed on his claim that trial counsel improperly pressured him to plead guilty to Count 4 involving possession of the short-barreled rifle in furtherance of a drug trafficking crime.

### 3. Failure to Explain the Plea Agreement

Vega's final argument in support of his ineffective assistance of counsel claim is that Trial Counsel failed to "explain and make sure [Vega] understood the plea" which resulted in Vega being unable to knowingly, voluntarily, and intelligently plead guilty. According to Vega, he believed he would receive a five-year consecutive sentence instead of the ten-year consecutive sentence he received, again based on the length of the sawed-off rifle. See Section 2255 Motion, pp. 7-8.

---

[4] Moreover, the statements in his Section 2255 Motion are internally inconsistent insofar as he first states that "someone" removed the wooden stock handle of the 795 Marlin, but later states that "someone" removed the metal stock handle.

As with Vega's other claims, this claim is wholly rebutted by Vega's own declarations and statements. The Plea Agreement clearly articulated that Vega was entering a guilty plea to a violation of 18 U.S.C. § 924(c), which carried a statutory mandatory minimum 10-year sentence.[5] See Gov't Ex. 1, ¶¶ 1b, 13, 14. At the plea proceeding, Vega assured Judge Geraci several times that he understood the minimum sentence he could receive on Count 4 was 10 years, that the sentence would run consecutively to any sentence on Count 1, and that the aggregate sentencing range was 177 to 191 months due to the consecutive nature of the sentences. Gov't Ex. 2, pp. 5, 11. Vega further confirmed that there was nothing in the Plea Agreement that he did not understand. Id., pp. 13-14, 14-15. Again, in light of Vega's prior statements under oath, he cannot succeed on his claim that Trial Counsel was ineffective in failing to fully explain the terms and conditions of the Plea Agreement to him.

The record clearly establishes that Vega's decision to enter into the Plea Agreement was knowingly, voluntarily, and intelligently made, and that Trial Counsel provided him with professional and effective representation. Indeed, Trial Counsel negotiated a beneficial Plea Agreement pursuant to which the remaining counts of the indictment were dismissed and Vega received

---

[5] Title 18 U.S.C. § 924(c)(1)(B)(i) reads in pertinent part as follows: "(B) If the firearm possessed by a person convicted of a violation of this subsection — (i) is a short-barreled rifle. . .the person shall be sentenced to a term of imprisonment of not less than 10 years. . . ."

a three-level downward departure for acceptance of responsibility on Count 1, which reduced his sentence from 57 to 71 months' imprisonment to 24 months' imprisonment. There is no basis on which to find that Vega's conviction and sentence were unconstitutionally obtained.

## CONCLUSION

For the foregoing reasons, the Section 2255 Motion is denied. No certificate of appealability shall issue because Vega has failed to make a substantial showing of the denial of a constitutional right. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   December 20, 2019
         Rochester, New York.